# STATE OF MICHIGAN

# COURT OF APPEALS

KENNETH POLLACK, LYNN POLLACK, SUSAN ALDRICH, MARCUS WARREN, LISE WARREN, CHARLES SCHILLING, LYNDA SCHILLING, DOUGLAS TAYLOR, DEBORAH TAYLOR, DAVE DETTLING and EVIE DETTLING,

UNPUBLISHED
May 30, 2017

Plaintiffs/Counter-Defendants-Appellants,

v

No. 330540; 331241
Lenawee Circuit Court
LC No. 14-005069-CZ

JEFFREY B. FRASER, DANIELLE FRASER, SUSAN BROWN and RUSSELL BROWN,

Defendants/Counter-Plaintiffs-Appellees.

Before: RIORDAN, P.J., and RONAYNE KRAUSE and SWARTZLE, JJ.

RONAYNE KRAUSE, J. (*concurring in part and dissenting in part*).

I respectfully dissent in part. My reading of the trial court's order from 1980 is that it indeed found the now-plaintiffs' predecessors in interest to hold real riparian rights, either granted outright or adversely acquired, a finding that cannot now be collaterally attacked. Although those rights do not necessarily extend to tying boats to the sides of plaintiffs' dock, and therefore may not afford plaintiffs much of the relief they sought in this matter, the trial court clearly and catastrophically erred in ordering plaintiffs to *remove* their dock and holding that they have *no* riparian rights. I would reverse in part and remand for further proceedings accordingly.

At issue in this matter is a ten-foot-wide strip of land ("the strip") running between the shore of Wamplers Lake and a road known as either Beach Drive or Egan Highway. On the lake side of Beach Drive is the Supervisor's Plat #1 subdivision, and on the backlot side is the Oak Shade subdivision. Defendants own the land lying directly on either side of the strip. Plaintiffs own properties in Oak Shade on a dead-end street platted as Oak Street, which apparently roughly follows the path the strip would take if it were extended across Beach Drive. Due to the bizarre and unusual history of the strip, it was not owned by the platters of Oak Shade when it was platted, and it was also not owned by the platters of Supervisor's Plat #1 when it was platted.

-1-

The original platters of Oak Shade came into ownership of the strip the year after Oak Shade was platted, and it was previously found in litigation commenced in 1979 that those platters in some way communicated to plaintiff's predecessors that they may use the strip to access the lake. Those platters died without ever conveying the strip to anyone, and it appears that no heirs or beneficiaries ever came into ownership of the strip, either. Consequently, the title holders of the strip are long since deceased, and no person or entity with a fee ownership interest therein has ever been a party to this or to the prior litigation.

The prior litigation was commenced in 1979 over plaintiffs' predecessors' (the defendants in that case) erection of a dock on the strip, which in one form or another plaintiffs' predecessors used for "normal lake recreation" as well as tying a few boats to the end and mooring large pontoon crafts to the sides. It was established, *inter alia*, that in all likelihood plaintiffs' predecessors' properties would not have been saleable without access to the lake over the strip, and the original owners of those properties, who as noted did come into ownership of the strip the year after the Oak Shade was platted and never conveyed it. I find significant the following portion of the trial court's order resolving the 1979 litigation, which the majority quotes:

> If there is no encroachment of the submerged land of the [now defendants], [plaintiffs' predecessors] have a right to tie boats and rafts to their dock as possessors of litterol [sic] or riparian rights. Even if they had no such riparian rights, they would have acquired such rights by adverse user. The riparian rights, of course, can be exercised only if they are reasonably used so as not to unreasonably interfere with others rights.

> For the purposes of this law suit, we find that the dock length and the tying of boats and rafts to it, at the far end had been done in a reasonable exercise of riparian rights. We would therefore enjoin only the use of anchorage that encroaches directly on and into the [neighboring] submerged land.

I agree wholeheartedly with the majority's conclusion and reasoning that the trial court's opinion and its judgment in 1980 are *in pari materia* and must be treated as functionally a single instrument. Where I differ from the majority is that I find it unambiguous that the trial court in 1980 established that plaintiffs' predecessors, and therefore plaintiffs, have actual riparian rights, and it does not matter whether those rights were conveyed by the record fee owners or were acquired by adverse user.

The practical ramifications are that the trial court therefore completely and catastrophically erred in ruling that plaintiffs had to remove their dock. While the trial court initially characterized it as "a type of license" that the fee owners of the strip, if any, would be estopped from revoking, the trial court clearly treated the matter as a conveyance of riparian rights to the owners of the lots on Oak Street. Right or wrong, the trial court's order in 1980 was not appealed; it cannot now be collaterally attacked, which is what the trial court effectively did. I would hold that the trial court's order must be reversed to the extent it found that plaintiffs are not the possessors of actual riparian rights on the 10-foot strip and that the dock must be removed. I am not persuaded that any ordinance that has come into existence since 1980 affects this, because I presume, although I do not know or decide and would refer to the trial court to

-2-

make a proper determination, that plaintiffs' use of the dock has been sufficiently continuous to be "grandfathered."

That being said, I am not persuaded that plaintiffs are entitled to the relief *they* sought. As the majority notes, plaintiffs commenced the instant litigation seeking, seemingly, to use the dock for *more* than was established as their right under the 1980 order. In particular, plaintiffs object to defendants' erection of docks on either side of their dock. Plaintiffs have a right to a dock. Plaintiffs have a right to tie a few boats off the end of the dock and use the dock for "normal lake recreation" purposes. Plaintiffs do *not* have a right to anchorage encroaching over the edge of the 10-foot-wide strip onto the submerged lands of the neighboring properties owned by defendants. If defendants' docks do not themselves encroach over the same boundary line, do not preclude plaintiffs from having "three or four boats or rafts" tied to the end of their dock, and do not preclude plaintiffs from reasonable access to the water for "normal lake recreation" purposes, defendants are simply not interfering with plaintiffs' rights. I entirely agree with the majority that plaintiffs' "original complaint . . . comprised solely of claims of trespass and private nuisance" fail as a matter of law. However, I so find simply because defendants are apparently not interfering with any of plaintiffs' rights.

I would reverse the trial court's order to the extent it held that plaintiffs lack riparian rights and would instead hold that plaintiffs *do* have riparian rights, the reasonable exercise of which extends to the erection and maintenance of a dock, tying a few boats or rafts to the end thereof, and using the dock to access the water. I would affirm the trial court's order to the extent it held that defendants were neither trespassing nor engaging in a nuisance, and to the extent it denied plaintiffs permission to amend their complaint. I would vacate the trial court's order imposing sanctions and remand for reconsideration in light of a determination that plaintiffs do have riparian rights.

/s/ Amy Ronayne Krause